**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 2:24-CR-163 (4)** |
| **Plaintiff,** | |
| | **CHIEF JUDGE SARAH D. MORRISON** |
| **vs.** | |
| **D'ANDRE BEASLEY,** | |
| **Defendant.** | |

**SENTENCING MEMORANDUM**
**OF UNITED STATES OF AMERICA**

The United States submits this Sentencing Memorandum in connection with Defendant D'Andre Beasley's sentencing hearing before this Honorable Court on Tuesday, October 14, 2025. The defendant has one objection to the Presentence Investigation Report (PSR) that remains outstanding. The Government believes the Guidelines is correctly calculated as 27–33 months (17/II) in the final PSR. The Government respectfully recommends that the Court sentence the defendant to a term of 30 months of imprisonment, followed by 3 years of supervised release.

**I.  BACKGROUND**

In July of 2022, ATF began investigating a series of suspicious gun purchases. After further investigation, the investigation indicated that a number of defendants engaged in a conspiracy to purchase firearms online using stolen credit card information, ship them to Federal Firearms Licensees (FFLs) in central Ohio, and then obtain the firearms (often for re-sale). More specifically, once the firearms were transferred to the Southern District of Ohio, the co-conspirator (on one occasion, Beasley) whose name was on the purchase (as the online purchaser) would go into the FFL, falsely fill out the ATF Form 4473 (by indicating that they were the actual buyer of

the firearm), and then obtain the firearm for further dissemination.  For his part, the defendant, D'Andre Beasley, obtained three (3) different guns as part of the conspiracy.  He did this by going to one FFL on one day, in July 2022.   In doing so, Beasley communicated with the leader of the conspiracy, Keith Davenport, about the guns.

On October 30, 2024, Beasley and others were indicted in a multi-count charging instrument.  Beasley was charged with conspiracy in Count 1, in violation of 18 U.S.C. § 371, as well as in Count 11 with making a false statement in the acquisition of a firearm, in violation of 18 U.S.C. §§ 922(a)(6), 924(a)(2), and 2.  On June 10, 2025, the defendant plead guilty to Count 1.  On June 20, 2025, the Probation Officer released Beasley's final PSR.  The Probation Officer calculated the following:

- A base offense level of 12, per U.S.S.G. § 2K2.1(a)(7);
- An increase of 2, per *id.* § 2K2.1(b)(1)(A), because the offense involved 3 firearms;
- An increase of 2, per *id.* 2K2.1(b)(4)(A), because at least one of the firearms was stolen (i.e. Beasley helped to render all of the guns stolen because he facilitated their purchase with stolen credit card information);
- An increase of 4, per *id.* 2K2.1(b)(5), because the defendant engaged in firearms trafficking;
- Minus 3 for acceptance, per *id.* 3E1.1 (a) and (b).

The resulting offense level came to a 17, with a criminal history of II, which yielded an initial sentencing range of 27-33 months.  As detailed below, one objection remains, and it would affect the guideline calculation.  In the Government's view, the objection should be overruled, and the guideline range should remain at 27-33 months.

## II.  LEGAL STANDARDS

After *Booker v. United States*, 543 U.S. 220 (2005), district courts engage in a three-step sentencing procedure.  Courts first determines the applicable guidelines range, then considers

whether a departure from that range is appropriate, and finally considers the applicable guidelines range—along with all the factors listed in 18 U.S.C. § 3553(a)—to determine a sentence.  The central command in imposing a sentence is to fashion one that is sufficient, but not greater than necessary, to meet the goals set forth in § 3553(a).

### III.  ANALYSIS

#### A.  The Applicable Guidelines Range

The Probation Officer calculated a total offense level of 17 and a criminal history of II, resulting in an initial guidelines range of 27-33 months of imprisonment.  One objection from the defendant remains.  It should be overruled, and the guideline range should remain the same.

**B. Beasley objects to the lack of a minor role reduction.**  Beasley claims he paid Davenport $800 and Davenport ordered guns online *for Beasley*.  He claims that he picked up the guns, lying on the ATF Form 4473, and then realized that the three guns were not the guns that he had directed Davenport to purchase for him.

First of all, those facts are not the facts to which Beasley pled guilty.  The Indictment and the Statement of Facts attached to Beasley's guilty plea make clear that the order of direction is from Davenport to Beasley, not from Beasley to Davenport.  Beasley's version of the facts contradict the facts to which he pled guilty, under oath, before this Court and the facts for which he was indicted by a grand jury.

Furthermore, in the text messages between Davenport and Beasley, there is no evidence that Beasley directed Davenport to order the three firearms that he picked up.  *See* Text Messages, attached hereto as Exhibit 1.  Beasley picked up those three firearms from the FFL on July 27, 2022.  *See* Exhibit 1 at page 5, 3:24:19 PM UTC ("It's $95. I gotta go grab cash from the atm"); page 7, 4:20:55 PM UTC ("I'm still in here") and 4:21:01 PM UTC ("This shit going slow as

3

fuck").  There is some evidence in the text messages that perhaps Beasley directed Davenport to order another firearm, a Hellcat Pro firearm, *see* Exhibit 1 at 8, 6:17:35 PM UTC ("Hell cat pro if you can find it"), and that Davenport ordered the firearm later that day.  *See* Exhibit 1 at 8, 11:33:04 PM UTC ("I'm fin order it rn").  However, this would be a *second* order and transaction by Beasley, being *initiated* late in the day on July 27, 2022, and not the *single* transaction to which he has already pled guilty.

Lastly, if the facts transpired as he asserts that they did, Beasley's conduct would not make him a minor or minimal participant.  Instead, it would make him more of an equal or greater participant to Davenport, since Beasley would be the one choosing the guns, directing Davenport to purchase them, and using Davenport's willingness to engage in criminal activity for Beasley's own personal benefit.  In such a scenario, Beasley's conduct would be more appropriate for an *aggravating* role enhancement pursuant to § 3B1.1, rather than a *mitigating* role reduction pursuant to § 3B1.2.

The Court should overrule Beasley's objection as it is inconsistent with the evidence and the facts of his guilty plea before this Court.

**C.  Consideration of the Sentencing Factors from 18 U.S.C. § 3553(a)**

Finally, the Court must consider the applicable guidelines range alongside the sentencing factors from 18 U.S.C. § 3553(a) to fashion a sentence that is sufficient, but not greater than necessary, to meet Congress's sentencing goals.  The Government contends that the 3553(a) factors support a sentence of 30 months of incarceration, in the middle of the applicable guideline range.

The straw purchase of firearms for the purpose of firearms trafficking is a serious offense.  By their very nature, guns are dangerous.  And guns in the wrong hands are even more dangerous.

4

This truth has played out in Columbus, unfortunately, with people killed by individuals who had guns when they shouldn't have.  This is the reason Congress has seen fit to regulate the proper sale of firearms, in particular by controlling who can buy and sell the guns, and where the guns can go—all to prevent guns from ending up in the wrong hands.  Arranging for the straw purchase of inherently dangerous instruments is, by itself, an inherently dangerous crime.  It skirts the regulatory framework in place to track and monitor the sale and re-sale of inherently dangerous instruments.  And it entails a fundamental lack of care about what happens with the guns afterwards.  Accordingly, courts across the country have understood that the act of running a straw purchase scheme, or of engaging in the illegal purchase and transfer of firearms, "to be a callous and extreme risk to public safety."  *United States v. Daniells*, No. 15-10150, 2017 WL 2256988, at *4 (D. Mass. May 23, 2017); *see United States v. Arzu*, No. 5:07 CR 166, 2007 WL 2713908, at *3 (N.D. Ohio Sept. 17, 2007) (noting that "[t]he access to firearms through illegal channels is a problem for law enforcement of immense p[ro]portions," which, in part, justifies "a sentence at the highest level of the advisory Guidelines range"); *United States v. Elsaddique*, 252 F. App'x 992, 993 (11th Cir. 2007) ("[The defendant] used a false name to purchase three firearms. The act alone creates a significant danger to the public, which is only increased by the possibility that he made the purchase on someone else's behalf—someone who may have had a more serious and more recent criminal history.").

Beasley's personal history and characteristics also offer some cause for concern.  His two prior criminal convictions involve firearms.  In 2016, at the age of 22, he illegally possessed a concealed and loaded Glock handgun, with an extended magazine attached to it.  The magazine was capable of holding 30 rounds of ammunition.  In 2019, at the age of 26, he again committed a firearm offense.  He illegally possessed a loaded Springfield Armory handgun.  In both cases,

Bealsey was essentially sentenced to no period of incarceration.  After those experiences with the criminal justice system and receiving leniency from those courts, Beasley engaged in the conduct in the instant matter.

Furthermore, while on pretrial release in the instant matter, Beasley was arrested for domestic violence-related offenses, including felony charges and charges involving strangulation. The alleged facts of that matter are detailed in the PSR and are tremendously troubling.

Beasley appears to have had a childhood with some challenges.  He was abused by his stepfather.  His mother worked and so he bore responsibility at home, despite his youth.  Those challenges, do not, however, in any way excuse his past or current criminal conduct.

The United States believes that a sentence in the middle of the applicable guideline range would serve the purposes of sentencing.

### IV.  CONCLUSION

For these reasons, the United States respectfully requests that the Court sentence the defendant to a term of imprisonment of 30 months, followed by 3 years of supervised release, and a $100 special assessment.

Respectfully Submitted,

DOMINICK S. GERACE II
United States Attorney

s/ Damoun Delaviz
S. COURTER SHIMEALL (0090514)
DAMOUN DELAVIZ (PA 309631)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Phone: (614) 469-5715
Email: Courter.Shimeall@usdoj.gov
            Damoun.Delaviz@usdoj.gov